**Jesse A. DAVIS, Respondent,**

v.

**ST. LOUIS SOUTHWESTERN RAILROAD CO., a Corporation, Appellant.**

**No. 53389.**

Supreme Court of Missouri,
Division No. 2.

July 14, 1969.

Motion for Rehearing or to Transfer to Court En Banc Denied Sept. 8, 1969.

Don B. Sommers, St. Louis, for plaintiff-respondent.

Coburn, Croft, Kohn & Herzog, Alan C. Kohn, John R. Musgrave, St. Louis, for defendant-appellant.

LAURANCE M. HYDE, Special Commissioner.

Action under Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. for $115,-000.00 damages for personal injuries. Verdict for defendant but trial court sustained plaintiff's motion for new trial. Defendant has appealed from this order and we affirm. There is no issue as to applicability of the act.

The transcript filed did not specify any ground for sustaining the motion for new trial but by stipulation of the parties the transcript was corrected to show "plaintiff's motion for new trial sustained on the grounds stated in paragraph 5 of plaintiff's motion." This was error in giving Instruction No. 4 at defendant's request. An opinion affirming the order for new trial, written by Stockard, C., was adopted but a rehearing was ordered on the Court's own motion. We adopt part of the former opinion, without quotation marks, with some additions, for statement of facts and for ruling defendant's claim that plaintiff failed to make a submissible case.

On March 29, 1966, plaintiff and Mr. Henry Hall, employees of defendant, were engaged in putting together a railroad "truck" which consists of four wheels, two axles, side frames, and what is called a bolster which goes between the wheels. Plaintiff picked up one side or end of a "brake beam," which weighed 150 to 200 pounds, and Mr. Hall picked up the other side or end. In the process of placing the brake beam into a slot on each side of the frame something (as hereafter noted, presumably a hammer) hit plaintiff under his eye, and his injuries necessitated the removal by surgery of the lens of his eye. Although a chain hoist had previously been used by these employees to place a

"brake beam" into position, none was available for use on the occasion when plaintiff was injured.

Plaintiff's verdict directing instruction was as follows:

"Your verdict must be for the plaintiff if you believe:

"First, defendant failed to provide reasonably safe methods of work, or

"Second, defendant's employee other than plaintiff dropped the brake beam on the hammer handle, and

"Third, defendant in the respect submitted in paragraph First was negligent, or defendant's employee other than plaintiff in the respect submitted in paragraph Second was negligent, and

"Fourth, such negligence directly resulted in whole or part in injury to plaintiff."

Defendant's converse instruction was as follows:

"Your verdict must be for defendant if you do not believe that defendant was negligent."

In his motion for new trial plaintiff asserted Instruction 4 was erroneous because (a) while Instruction 3 submitted disjunctively the negligence of defendant in failing to provide safe methods of work or the negligence of defendant's employee, Henry Hall, in dropping the brake beam on the hammer handle, Instruction 4 conversed only the negligence of the defendant; (b) Instruction 4 violated the instructions on page 249 of MAI where it is stated that a converse instruction using the form "if you do not believe" is not suitable for conversing multiple negligent acts submitted in the disjunctive; and (c) Instruction 4 failed to converse all theories of recovery submitted in Instruction 3.

Defendant first contends on this appeal that plaintiff failed to make a submissible case that Henry Hall "dropped the brake beam on the hammer handle," and for that

reason Instruction 4 cannot be prejudicially erroneous.

A photograph admitted into evidence shows a railroad "truck" in the construction stage. On the bolster, which is a large metal framework extending perpendicular to the tracks and between the front and rear wheels, there is a hammer with the handle extending over the edge. Anything striking downward on the end of the handle would cause the hammer to be projected upward. This photograph was not taken at the time of the accident, but was a posed situation subsequently taken. In the photograph the brake beam is shown with Mr. Hall standing astride the axle, but plaintiff or some one substituting for him is not shown in the place plaintiff was standing at the time of the accident. The brake beam at the end where Mr. Hall is standing is shown to be even with the top of the bolster, but the other end where plaintiff was working is shown to be much lower. It is below the hammer handle, and it appears to be on or near to the ground. Plaintiff testified that at the time of the accident he picked up his end of the brake beam and Mr. Hall picked up the other, that he then stepped over the axle and he first set his end of the brake beam down in the slot which is below the bolster and which would be below the hammer handle. He then started to step back. Mr. Hall was still holding his end of the brake beam when something hit plaintiff below the eye. He did not see the hammer and did not know if that was what hit him. Mr. Hall testified that before they carried the brake beam to its position the hammer was on the bolster as shown in the photograph. He further stated that plaintiff first stepped across the axle with his end of the brake beam and "put it down," and Mr. Hall then turned his back to plaintiff, threw his leg over the axle, and "dropped my end in." He then turned around and plaintiff was lying on the ground nearby with a cut beneath his eye, and the hammer was lying on the ground between plaintiff and the "truck." He and others "looked" but did not find anything "that could have hit him

but that hammer." Mr. Hall identified the photograph in which the hammer and the brake beam were shown, and stated that it was an accurate representation of his position when he was placing the brake beam into position. He also stated that the photograph showed the position the brake beam was in "right before you put your end in."

Defendant argues that Mr. Hall was the only one who saw the hammer and was the only one who could testify concerning the relative position of the hammer and the brake beam immediately before the accident; that his testimony places the brake beam well below the hammer; and for that reason it could not have been dropped on the hammer handle by Mr. Hall.

Defendant relies on such cases as Draper v. Louisville & Nashville Railroad Company, 348 Mo. 886, 156 S.W.2d 626; Reece v. Reed, Mo., 326 S.W.2d 67; Brophy v. Clisaris, Mo.App., 368 S.W.2d 553, and others, which in effect hold that when a plaintiff presents positive testimony of a fact he cannot successfully contend another contrary fact exists on the basis of inferences from circumstances testified to by the same witness.

The evidence is very convincing, although circumstantial, that during the process of plaintiff and Mr. Hall placing the brake beam into position in the "truck," plaintiff was struck by a hammer which immediately prior thereto was lying on the bolster with its handle extending over the side. Also, we do not consider the testimony of Mr. Hall, which defendant contends to constitute positive testimony, to meet that test. When he testified that the photograph showed the position of the brake beam (with plaintiff's end being below the hammer handle) it appears that he was actually referring to his end of the brake beam, and its position, as shown, was "right before" he placed it in the slot. However, the evidence is that after plaintiff placed his end of the beam into position, Mr. Hall had to "get straddle" of the axle, with his back to plaintiff, "raise over and throw that beam in," and that when "you start those things [brake beams] in" the brake beam is higher than the top of the bolster where the hammer was lying. In addition, from the photograph, it appears that the top of the bolster is only slightly if any higher than Mr. Hall's knee, and that the top of the axle is higher than his knee. When Mr. Hall held his end of the brake beam in his hands and moved toward the bolster in getting "straddle" of the axle, and then threw the beam into position, his end, and a substantial portion of that part extending toward plaintiff's end, had to be higher than the hammer handle extending out over the edge of the bolster. The evidence does not show that it was impossible for Mr. Hall to have dropped the brake beam on the hammer.

■ In determining whether a submission is supported by the evidence, the party submitting the issue is entitled to all reasonable inferences from the evidence. Gaddy v. Skelly Oil Co., 364 Mo. 143, 259 S.W.2d 844. We conclude that the submission challenged by defendant was supported by the evidence.

■ Defendant relies on MAI 29.02(2) in claiming Instruction 4 was proper. Such an instruction is authorized when there is a single negligence submission by 29.02(2) and following "Notes on Use." However, these notes continue as follows: "Caution. This form, using the introduction 'if you do not believe' is *not* suitable for conversing multiple negligent acts submitted in the disjunctive. For such converse instructions use the form similar to Converse Instruction 29.04(5)." Instruction 29.04(5) is labeled "Conversing All Theories of Recovery" and requires specific findings that defendant did not commit each submitted claim of negligence. "Notes on Use" following 29.04 state: "Caution. As the Rules require that all multiple theories of recovery be submitted in the disjunctive, defendant must be sure that ALL such theories are conversed." Defendant argues that it "did not converse the al-

leged multiple acts of negligence (i. e., failure to provide safe methods of work and dropping the brake beam on the hammer)" but that "on the contrary defendant conversed negligence." (In its reply brief "defendant conversed negligence, that is, all negligence from any source.") In our view that is exactly what was wrong with it because the MAI directions clearly mean that multiple negligent acts cannot be conversed in such a general cryptic way but instead require that all theories of negligence submitted in the disjunctive must be designated and conversed specifically.

Defendant also says plaintiff's Instruction 3 was erroneous and should have been in the following form:

"Your verdict must be for Plaintiff if you believe:

"First, (a) defendant failed to provide reasonably safe methods of work, or

(b) defendant, acting by and through its employee Henry Hall, dropped the brake beam on the hammer handle, and

"Second, defendant in any one or more of the respects submitted in paragraph First was negligent, and

"Third, such negligence directly resulted in whole or part in injury to the plaintiff."

■ While we agree that this would have been a better drafted modification of MAI 24.01, we do not agree with defendant's claim that an instruction in this form would have made proper Instruction 4. The instruction suggested would still be a submission in the disjunctive of multiple negligent acts which would require a converse instruction in "the form similar to Converse Instruction 29.04(5)." Such a specific converse instruction is required in this case by MAI so that a jury could not believe that it should return a verdict for defendant if it did not believe defendant failed to provide reasonably safe methods of work, even though it did believe Hall negligently dropped the brake beam on the hammer handle or vice versa. Our conclusion is that the trial court properly granted a new trial for failure to comply with the above discussed requirements of MAI. "Furthermore, it is a familiar, well established principle that this court will be more liberal in upholding the trial court's action in sustaining a motion for new trial than in denying it; because to reverse the court's action in denying a new trial would require a reversal of a judgment." Pollard v. General Elevator Engineering Co., Mo.Sup., 416 S.W.2d 90, 96. See also Clevenger v. Walters, Mo.Sup., 419 S.W.2d 102, 105, saying: "This rule of liberality applies even when a new trial is granted for error in an instruction." Moreover, the trial court was in a better position than this court to determine whether the jury could have been confused by failure to comply specifically with these MAI requirements.

In any event, this court has required strict adherence to MAI instruction forms and "Notes on Use." In Brown v. St. Louis Public Service Co., Mo.Sup. (Banc), 421 S.W.2d 255, 258, it is stated: "If this court is to make this system work, and preserve its integrity and very existence, we must insist *that mandatory directions be followed* and that the pattern instructions be used as written." (Emphasis ours.) See also Brannaker v. Transamerican Freight Lines, Inc., Mo.Sup., 428 S.W.2d 524, 537; Peak v. W. T. Grant Co., Mo.Sup., 409 S.W.2d 58, 60; see also Use and Abuse of MAI, by Judge James D. Clemens, 24 Journal of the Missouri Bar 236.

The order granting a new trial is affirmed and the cause remanded.

PER CURIAM.

The foregoing opinion by HYDE, Special C., is adopted as the opinion of the court.

All of the Judges concur.

## ON MOTION FOR REHEARING OR TO TRANSFER TO COURT EN BANC

### PER CURIAM.

Defendant's main contention in support of its motion for rehearing or to transfer to the Court en Banc is that the jury could not have believed defendant was not liable if its employee Hall was negligent. Defendant points out plaintiff's counsel in his brief agreed that the jury "understood that the word 'defendant' included its servant Henry Hall" and said "it is inconceivable that the jury believed that somehow the railroad was not liable if Henry Hall was negligent." However, that is not the decisive issue in this case.

Plaintiff's contention, that "the failure to mention Henry Hall in Instruction 4" could not be prejudicial, would be relevant if this case had been submitted only on the single claim of negligence of defendant's employee Hall, in dropping the brake beam on the hammer handle. Then the only question would have been whether the jury would understand that defendant was liable if they believed its employee Hall was negligent and plaintiff's counsel agreed they would. However, plaintiff also submitted a claim of defendant's negligence (failure to provide safe methods of work) that had nothing to do with Hall's conduct thus submitting separate multiple negligent acts in the disjunctive.

Defendant says of its Instruction 4: "it is right out of the M.A.I. book (M.A.I. 29.02(2))." However, the book says it does not fit this case because the book states such an instruction "is *not* suitable for conversing multiple negligent acts submitted in the disjunctive"; and the book directs attention to 29.04(5) for the suitable form to use. The trouble with defendant's contention in this case is not that the jury would be confused about whether defendant would be liable if they believed its employee

Hall was negligent but whether they would understand the issues when two such different grounds of negligence were disjunctively submitted without each being specifically conversed as M.A.I. 29.04 requires. The trial court considered this failure to comply with M.A.I. directions to be prejudicial error and we agree that this is a reasonable conclusion.

The motion for rehearing or to transfer to the Court en Banc is overruled.