**Charles M. O'RILEY and Carol J. O'Riley, Appellants,**

v.

**Forrest COFFELT, Respondent.**

**No. KCD 29910.**

Missouri Court of Appeals, Western District.

Oct. 1, 1979.

Larry L. Zahnd, Glen A. Dietrich, Zahnd & Dietrich, Maryville, for appellants.

Max W. Foust and Lloyd L. Messick, Morris & Foust, Kansas City, for respondent.

Before DIXON, P. J., and TURNAGE and KENNEDY, JJ.

TURNAGE, Judge.

Charles O'Riley and his wife, Carol, filed suit against Forrest Coffelt for personal injuries suffered by Charles and resultant loss of services suffered by Carol. The jury

found the issues in favor of Coffelt and this appeal followed.

The O'Rileys contend the court erred in giving certain instructions and in refusing to allow their counsel to pass an exhibit to the jury. Affirmed.

In November, 1975, O'Riley drove his truck to the Gendler Quarry near Graham, Missouri, to obtain a load of lime. On his arrival at the quarry, he observed a truck belonging to Coffelt, who was well known to O'Riley. O'Riley parked his truck in position to be loaded when his turn came and walked over near the Coffelt truck. O'Riley observed that Coffelt had removed a front wheel from the truck and had it on the ground. O'Riley walked to within five or ten feet of Coffelt and inquired if Coffelt had everything he needed to fix the wheel. Coffelt asked O'Riley if he thought a new race should be put in the wheel. [A race is the outer part of the wheel bearing.] O'Riley walked to the wheel, felt inside the hub, and said that if Coffelt had a race he thought a new one should be inserted. O'Riley stated he was familiar with wheels and the way bearings fit in the race and knew the procedure necessary to remove a race so a new one could be installed. He stated he knew it was necessary to use a hammer and some sort of tool which could be used as a punch to force the race out of the wheel.

After O'Riley advised Coffelt he thought a new race should be installed, Coffelt walked a short distance to a pickup truck and obtained a hammer and a metal punch bar about 15 to 17 inches long. Coffelt returned to the wheel and leaned it against the front bumper. He then inserted the punch into the hub and started pounding on the punch with the hammer in an effort to eject the race.

O'Riley stated after Coffelt had struck a few blows the wheel started to move, so O'Riley placed his hands on the wheel to steady it. There was no evidence Coffelt requested any assistance from O'Riley. The evidence does not reveal exactly where O'Riley was standing when Coffelt began hammering the punch, but it would appear O'Riley was standing next to the wheel as he did not testify he moved prior to placing his hands on the wheel.

After O'Riley placed his hands on the wheel, Coffelt struck two or three more blows when O'Riley felt something in his eye. O'Riley released the wheel and went to the mirror on the outside of the truck to see if he could see anything in his eye. He could not, but felt there was something in it, so he left the quarry and drove to a field where his wife was driving a tractor. He told her he had something in his eye and needed to see a doctor and she drove him into town to a doctor who advised him to go on to St. Joseph to see an eye specialist. O'Riley went to St. Joseph and underwent surgery that evening for the removal of a piece of steel from his eye.

There was no dispute at the trial that O'Riley had a piece of steel in his right eye and his vision was reduced to 20/200, a level at which he could only count fingers at two to three feet, according to O'Riley.

The contested issue tried by the parties was the negligence of Coffelt and the contributory negligence of O'Riley. O'Riley first contends the court erred in giving Coffelt's contributory negligence instruction. This instruction read:

Your verdict must be for the defendant on the claims of both Charles M. O'Riley and Carol J. O'Riley whether or not defendant was negligent if you believe:

First, plaintiff Charles M. O'Riley in the exercise of ordinary care, could have known that there was a danger in standing close to where defendant was working; and

Second, plaintiff Charles M. O'Riley moved from a position of safety to a place where he would be in danger of being injured as a result of defendant's work; and

Third, plaintiff Charles M. O'Riley was thereby negligent, and

Fourth, such negligence of plaintiff Charles M. O'Riley directly caused or directly contributed to cause any damage plaintiffs may have sustained.

■ O'Riley levels two attacks on this instruction—that it is not supported by evidence and that paragraph third does not follow MAI and was confusing to the jury.

O'Riley argues the evidence did not show that he could have known there was a danger in standing close to the point where Coffelt was hammering the punch nor was there evidence to show O'Riley moved from a position of safety to a place where he would be in danger of being injured.

"In determining whether evidence is sufficient to support the giving of a contributory negligence instruction, we consider the evidence in the light most favorable to the defendant, and we give him the benefit of all favorable inferences therefrom. We also disregard plaintiff's evidence unless it tends to support the grounds of contributory negligence submitted in the instruction." *Peppes v. Huddleston,* 533 S.W.2d 701, 703[1, 2] (Mo.App.1976). The evidence just recited shows that O'Riley was in a position of safety some five to ten feet away from Coffelt when O'Riley moved forward to touch the hub of the wheel. At this time O'Riley knew the problem was with the race containing the wheel bearings. O'Riley admitted that he knew the race had to be pounded out with tools and stated he had seen almost every conceivable tool used for this purpose. He further admitted that he knew when a metal punch was struck by a metal hammer there was a chance that a piece of metal would be dislodged and this could cause injury.

It is apparent that when O'Riley was five to ten feet away from the wheel he knew the danger involved from steel particles inherent in the method used to remove a race and knew the problem with the Coffelt wheel was the race. There is no dispute that he was in a position of safety at that time and he admittedly moved toward the wheel possessed of the knowledge of the danger just described. From these facts the jury would be authorized to infer that O'Riley could know of the danger associated with the removal of the race from the Coffelt wheel while in a position of safety and thereafter moved to a position immediately next to the wheel and later placed his hands on the wheel to put himself even closer to the danger arising from Coffelt pounding on the punch with a hammer. This was sufficient evidence to support the giving of the instruction.

O'Riley next contends the instruction was erroneous because in paragraph third it stated "plaintiff Charles M. O'Riley was thereby negligent." O'Riley urges that this was confusing to the jury since "thereby negligent" was not confined to that part of the instruction describing his movement from a position of safety to one of danger. He says this instruction was ambiguous because it did not refer to either paragraph and the jury could have found against him on a finding on only one paragraph rather than considering both. It is difficult to imagine how the jury could have been misled by this instruction. However, this argument is answered in *Kraus v. Auxvasse Stone & Gravel Company,* 444 S.W.2d 434, 438[4] (Mo.1969). In that case the court approved an instruction identical in form to this instruction including paragraph third. The court held there was no MAI form prescribed for the instruction given and stated it "fairly and in the spirit of the rules submitted the contributory negligence of Mr. Kraus . . . ." There was no MAI form for the instruction submitted in this case and no reason is apparent to condemn the form used when that form was approved in *Kraus.* The instruction was supported by the evidence and fairly submitted the defense of contributory negligence.

■ O'Riley also questions the giving of Coffelt's converse instruction. This instruction read:

Your verdict must be for the defendant and against both Charles M. O'Riley and Carol J. O'Riley if you do not believe that defendant was negligent.

The O'Rileys submitted their causes in identical verdict directors in the following form:

Your verdict must be for plaintiff Charles M. O'Riley if you believe:

First, defendant, either:

used a battered hammer, or

used a battered punch, and

Second, defendant was thereby negligent, and

Third, as a direct result of such negligence the plaintiff Charles M. O'Riley sustained damage,

unless you believe plaintiff Charles M. O'Riley is not entitled to recover by reason of Instruction Number 6.

O'Riley contends the converse instruction is erroneous because the verdict directors contained multiple negligent acts in the disjunctive and under the Notes on Use under MAI 33.02(2) such instruction is not appropriate to converse multiple theories of negligence submitted in the disjunctive. O'Riley relies on *Davis v. St. Louis Southwestern Railroad Co.*, 444 S.W.2d 485 (Mo.1969) which held the converse was required to converse all theories of negligence when submitted in the disjunctive. O'Riley argues the converse here should have conversed both theories, i. e., used a battered hammer or used a battered punch. Coffelt's converse instruction is modified MAI 33.02(2) which is labeled in MAI as conversing negligence. The modification consisted only in the insertion of "and against both Charles M. O'Riley and Carol J. O'Riley." *Davis* does indicate that a converse to a verdict director submitting multiple theories of negligence in the disjunctive must converse each theory and a converse as to negligence only is not permitted. *Davis* has recently been distinguished and explained in *Graeff v. Baptist Temple of Springfield*, 576 S.W.2d 291 (Mo. banc 1978) when the court held it is proper to converse only the negligence portion of the verdict director without conversing each theory submitted in the disjunctive. The court stated at 304–5:

> *Davis* seems to require and implies that a defendant who converses the negligence paragraph of the verdict director containing disjunctive acts of negligence must also converse *all* disjunctive specifications. In this regard the implication is unfortunate and does not accord with MAI 33.04. The cautionary note to MAI

33.04 is applicable when the defendant elects to converse some or all of the disjunctive submissions; it is not applicable to a situation as here when the defendant elects to converse only the negligence paragraph of the verdict director.

\*   \*   \*   \*   \*   \*

> *Davis* is not applicable to the situation here so as to invalidate a converse instruction by the defendant who elected to converse only the second paragraph of the verdict director (the negligence submission) and who did not converse the disjunctive submissions of negligence.

Even assuming without deciding that O'Riley submitted multiple negligent acts in the disjunctive, his attack upon this instruction is unavailing because of the holding in *Graeff*. While *Graeff* involved instructions under MAI 33.04, the Notes on Use under MAI 33.04 are virtually identical to those under MAI 33.02 with reference to conversing multiple theories of negligence submitted in the disjunctive. The form given in *Graeff* is identical to that given in this case except this case used the "if you do not believe" introduction while *Graeff* used the "unless you believe" introduction. Thus, there is no distinction between MAI 33.02 and MAI 33.04 so far as the attack here made is concerned. MAI 33.02(2) authorized Coffelt to converse negligence only and *Graeff* holds this is proper. The giving of the converse instruction was correct.

■ O'Riley finally contends the court erred in not allowing him to pass an itemized statement from Methodist Hospital, for O'Riley's stay there, to the jury. The exhibit simply listed the date, itemized services and charges made. The exhibit only bore on the issue of expenses of treatment, which related to injuries. Because the only contested issue was liability, it is apparent the jury never reached the evidence of injuries or treatment. Therefore, O'Riley could not have been prejudiced by a failure to pass the exhibit to the jury, even if the failure be considered error. *Jensen v.*

*Walker,* 496 S.W.2d 317, 320[2] (Mo.App. 1973).

The judgment is affirmed.

All concur.