John EINHAUS, Appellant,

v.

O. AMES CO., A Division of McDonough Co., and Stanley Wilson, Respondents.

No. WD 30418.

Missouri Court of Appeals, Western District.

May 4, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 2, 1981.

520

Charles E. Rendlen, Jr., Rendlen, Rendlen & Aherns, Hannibal, A. M. Wooleyhan, Quincy, Ill., for appellant.

W. Munro Roberts, Jr., Roberts & Heneghan, Inc., St. Louis, Jerome W. Seigfreid, Edwards, Seigfreid, Runge & Leonatti, Mexico, for O. Ames Co.

Marion F. Wasinger, Wasinger & Parham, Hannibal, for Stanley Wilson.

Before KENNEDY, P.J., PRITCHARD, J., and SWOFFORD, Senior Judge.

PER CURIAM.

John Einhaus brought suit against the O. Ames Company and Stanley Wilson to recover damages for an injury to his eye. Einhaus was in the employ of Wilson and using a hammer manufactured by Ames when the injury occurred. The jury returned a verdict in favor of both Ames and Wilson and after judgment was entered in conformity with the verdict Einhaus has appealed.

Einhaus was working for Wilson on his farm in August, 1973, with Wilson and the 15-year old Wilson son stringing barbed wire. The wire came in quarter-mile rolls on a spool. To facilitate unrolling the wire, iron bars were run through the spools. The Wilson boy attempted to place a six-foot long iron bar through a spool but was unsuccessful. He then tried to force the bar by striking it with a hammer. When he failed to drive the bar through, Einhaus told the son to let him try. Einhaus took the hammer and started striking the bar. After a few blows Einhaus felt something strike his nose and he experienced pain and some bleeding. Wilson was standing a few feet away when this occurred and immediately tried to determine what had happened. He examined the hammer and stated that he saw a fresh chip out of the face or head.

Einhaus was taken home and his wife drove him to a clinic. It developed that Einhaus had a metal splinter in his eye. There is no dispute that Einhaus had a piece of metal in his eye and that he totally lost the sight in that eye.

Both Einhaus and Ames produced experts who testified as to the relative hardness of the metal in the hammer and that in the bar. They agreed the bar was the harder of the two. Both also produced experts as to the propensity of the harder or softer metal to chip when the two were struck against each other. One expert gave the opinion that the harder metal would chip and one stated the softer would chip. There was expert testimony produced by Einhaus that the metal piece in his eye was from the hammer, and there was expert testimony from Ames that the piece was from the bar.

The theory of recovery against Ames was the failure to warn that the hammer would chip when used to strike harder metal. Recovery against Wilson was on the theory that he had furnished an unsafe hammer for use in driving the bar through the spool.[1] On this appeal Einhaus objects only to the instructions. Affirmed.

Einhaus first complains of Instructions 6 and 8 which were the contributory negligence instructions submitted by Ames and Wilson. These instructions were in identical language except for the name of the party and submitted that the verdict should be for Ames and Wilson whether or not those parties were negligent if the jury found that Einhaus used the hammer to attempt to drive the iron bar through the roll of barbed wire or

---

1. For a detailed examination of the pleading against Wilson see *Einhaus v. O. Ames Co.*, 547

S.W.2d 821 (Mo.App.1976).

"struck the iron bar with the hammer unnecessarily, or struck the iron bar when he knew the hammer was a carpenter's hammer and not intended for that purpose, and

"Second, plaintiff knew or by using ordinary care should have known that such use of the hammer was not reasonably safe, and"

Einhaus contends those instructions imposed a duty on Einhaus to discover the danger of using the hammer under the circumstances when there is no evidentiary support for a finding that Einhaus knew or could have known that he might injure himself by use of the hammer.

■ In *Williams v. Terminal R. Ass'n of St. Louis*, 339 Mo. 594, 98 S.W.2d 651, 655[4–7] (1936) the court stated:

Every one must know that when steel strikes steel, with great force, it is possible for small slivers to break off and fly from the place of impact.

In this case, Einhaus must be held to have possessed the knowledge that when he struck the steel bar with a steel hammer that it was possible for slivers to fly off and strike him. In short, it is a matter of common knowledge that when metal strikes metal with great force that slivers may fly off from the point of impact. It is further apparent that one doing the striking and being in close proximity may well be struck and injured by one of these slivers.

In *Ashley v. Williams*, 365 Mo. 286, 281 S.W.2d 875, 881[10] (1955) the court held that when the reasonable value of particular services is a matter of common knowledge, proof of such value is not necessary and the jury is presumed to know the value of such services. In this case it was not necessary for specific evidence to be produced to show that it was dangerous to strike the metal bar with a metal hammer because everyone is presumed to possess that common knowledge. Thus, there was no error in giving an instruction which submitted that Einhaus knew or should have known that the use of the hammer on this occasion was not reasonably safe.

■ Einhaus next contends there was no evidence to support the submission in these instructions that he struck the bar unnecessarily. There was evidence on behalf of Wilson that the impediment to the insertion of the bar was a crosspiece which could have been bent by inserting the bar and then rotating the bar, or could have been cut by use of fencing pliers which were readily available. Thus, this submission was supported by the evidence.

■ Einhaus next contends there was no evidence to support the submission of these instructions that he struck the bar when he knew the hammer was a carpenter's hammer, not intended for use in striking iron bars. Ames produced evidence that Einhaus had worked in a hardware store and had seen Ames' catalogs in which the various types of hammers were pictured and instructions on how to use each kind of hammer was included. The jury could have found that Einhaus knew of the difference in the various kinds of hammers and had seen instructions on the use of the various kinds.

■ Einhaus next complains of Instruction 9 which was the converse offered by Ames. The verdict director against Ames submitted that Ames had manufactured the hammer and that it "was dangerous when used to strike harder metallic objects and was thereby dangerous to persons using it in the manner and for the purpose intended," and that Ames failed to warn Einhaus of such dangerous condition. The Ames' converse submitted that the verdict must be for Ames "unless you believe the hammer was dangerous to persons using it in the manner and for the purpose intended." Einhaus contends this instruction did not converse all of one essential element and left out essential parts of his verdict director against Ames. In the argument portion of his brief, Einhaus identifies his attack on this instruction by stating it did not use all of the language contained in the verdict director quoted above relating to the hammer being dangerous when used to strike harder metallic objects because it left out the words "when used to strike harder

metallic objects and was thereby dangerous." Einhaus has no complaint because the converse, by omitting the words "when used to strike harder metallic objects," actually placed a heavier burden on Ames. Under the converse the jury could find the hammer was dangerous to a person using it in the manner intended which would include striking non-metallic as well as metallic objects. Thus, the converse required the jury to find the hammer dangerous when put to any use in the manner and purpose intended. This is broader than the verdict director which restricted the danger in the hammer to striking harder metallic objects. This placed a heavier burden on Ames rather than placing Einhaus at any disadvantage.

A similar situation existed in *Lietz v. Snyder Manufacturing Company*, 475 S.W.2d 105, 110 (Mo.1972). The same complaint was made there that a phrase had been omitted in the converse which appeared in the verdict director and the court held the omission complained of had actually placed a greater burden on the party offering the converse and thus there was no error of which the plaintiff could complain. The converse here falls under the holding in *Lietz* and was not error.

 Einhaus next contends the Ames' converse did not converse that portion of the verdict director which required the jury to find that Ames failed to warn of the dangerous condition of the hammer. It is beyond doubt that a party is not required to converse all parts of the verdict director but may converse any one or more of the elements essential to the plaintiff's case. *Anderson v. Cahill*, 528 S.W.2d 742, 747[3] (Mo. banc 1975). The failure to include a converse of the warning portion of the verdict director was not error.

Einhaus finally complains of the Wilson converse. The only objection leveled at this instruction which is not common with those already discussed in reference to the Ames' converse is that it did not converse certain essential elements contained in the verdict director in substantially the same language. The verdict director against Wilson required a finding that Einhaus was employed by Wilson and

SECOND, in the course of his employment by defendant Wilson plaintiff Einhaus attempted to drive the iron bar, in evidence, through the roll of barbed wire with the hammer furnished by defendant Wilson, and,

THIRD, defendant Wilson furnished a hammer which was not a reasonably safe tool to perform the task, and,

FOURTH, defendant Wilson by using ordinary care knew or should have known that the hammer furnished by him was not reasonably safe to perform the task, and,

The Wilson converse was as follows:

Your verdict must be for the defendant Stanley Wilson unless you believe that defendant Stanley Wilson by using ordinary care knew or should have known that the hammer was not reasonably safe to drive the iron bar through the roll of barbed wire, and the defendant Stanley Wilson did furnish the hammer to plaintiff to drive the iron bar through the roll of barbed wire.

The verdict director authorized the jury to return a verdict in favor of Einhaus if it found five elements in his favor:

First, Einhaus was employed by Wilson;

Second, Einhaus, in the course of his employment, attempted to drive the iron bar through the roll of barbed wire with a hammer furnished by Wilson;

Third, the hammer furnished was not reasonably safe;

Fourth, Wilson knew or should have known by using ordinary care that the hammer was not reasonably safe; and

Fifth, Wilson's conduct was negligent.

 It is apparent Wilson's instruction conversed only the fourth paragraph relating to Wilson's knowledge that the hammer was not reasonably safe and paragraph third that Wilson furnished the hammer. The converse uses the same language employed in paragraph fourth, except it omits the words "furnished by him" and instead of using the words "to perform the task"

described the task as driving the iron bar through the roll of barbed wire. The requirement that the converse be in substantially the same language as the verdict director is discussed in *Apex Oil Co. v. Beldner*, 567 S.W.2d 336, 339[2, 3] (Mo.App. 1978). The court there quoted from *Bartleman v. Humphrey*, 441 S.W.2d 335, 348 (Mo. 1969). In short, the same legal theory must be contained in the converse as is contained in the verdict director and the court should not be hypertechnical in requiring certain words or phrases or any particular arrangement of those words, but should be concerned with the meaning which the instructions would convey to a jury of ordinary intelligent laymen. In examining the converse under the applicable rule it is apparent the same legal theory is contained in the converse with reference to the knowledge of Wilson as was contained in the verdict director. While a few words were omitted and the actions of Einhaus were spelled out in the converse this did not substantially differ from the language used in the verdict director.

The final objection is likewise groundless. Einhaus contends the converse did not use substantially the same language to converse the fact that Wilson furnished the hammer to him. The verdict director had required the jury to find that Wilson had furnished the hammer to Einhaus and the converse stated the same theory in terms of furnishing the hammer to drive the iron bar through the roll of barbed wire. This did not change the legal theory contained in the verdict director when the jury was required to find that Wilson did furnish the hammer. While the verdict director referred to driving the iron bar through the roll of barbed wire in the first paragraph, the second paragraph referred to the driving of the bar as only "the task." The fact that the converse spelled out driving the bar through the barbed wire instead of using the term "the task" was not a substantial departure from the language employed in the verdict director. The instruction essentially conversed the fact that Wilson furnished the hammer to Einhaus, which was a contested issue of fact. This the instruction did in substantially the same language. There was no error in the respect charged in the Wilson converse.

The judgment is affirmed.